Our next case on the call of the docket is agenda number 11, case number 112815, Jan Karbin v. Marsha Levenson Karbin. Counsel for the appellant. Good morning, Your Honors. May it please the Court, I'm Leslie Rosen, counsel for Marsha Levenson Karbin by her guardian, Karen. Thank you so much for taking this case. My client is very, very pleased to be here, as am I. This is a case, and it's family law day here, and this is a case where I'm asking you to reverse an opinion that this Court issued in 1986 in Ray Marriage of Drews. And alternatively, if you won't outright reverse it, I'm asking you to distinguish it on my client's behalf, because Drews held in 1986 that under no circumstances well, it didn't say under no circumstances, I'm sorry, it held that the guardian of a disabled adult had no power to initiate a dissolution proceeding on behalf of the ward. It said it wasn't applicable in every case, but it seems to be a given at this time that it is in every case. And I think that Drews as a rule is outdated, it's unfair, and it's particularly unfair in this case, where this is a case where my client became disabled. She got married in 84. She became disabled in 1997. Her husband separated from her in 2004. Yes? About the Senate Bill 2547. Yes. That's still pending. It's pending, yes. But the fact that the General Assembly is taking action, doesn't that, assuming that it passes, doesn't that send a clear signal that the rule in Drews is currently the law? No, it's not the law. It's the rule that was adopted in 1997 and 1901. In neither of those cases did they apply the rule that they adopted. But that is the general rule. That is what the probate judges believe to be the law, and it is generally the rule. You cannot do it. You're a guardian, and you cannot initiate a dissolution proceeding, no matter what. If that bill passes, it would not impact your position. Well, if the bill were law, I wouldn't need to be here. But you never know what's going to happen in the legislature. I don't know if it's a priority of the legislature. I don't know how people feel about that right now. I only included that because I took a belt and suspenders approach to this case. And after the appellate court said that it's a job of the legislature, I thought, well, okay, I'll ask my state senator about this. And we drafted legislation that's pending. But I have no idea what's going to happen with that. And I don't think that it's required that the legislature act on it, because this court decided Druze, and this court can reverse Druze. This court decided Druze by interpreting the Probate Act. And I believe it's certainly in your power to revisit the issue and say that's no longer a law we want to keep in force in Illinois. It's the common law, don't I? And I suppose in the you also said there's the possibility we could distinguish Druze. Is that on the basis that Marcia filed a counterpetition? No. Well, yes and no. The particular facts, including the counterpetition, frankly, I think that had Judge Boyd understood the law, he shouldn't have allowed the counterpetition to be filed. But this case was filed by Jan. He participated in the litigation for almost two years. He answered the counterpetition. You know, you could say that he waived his, I don't know, you could say it, but I wouldn't go with the waiver, actually, because he is a man who's living with another woman in a different state. The other woman he's living with, I don't care if she's his caregiver or his lover. I don't care. He's living with her. Her name is on the mortgage. I don't care if he, the mortgage says that it's as his wife. We know she's not his wife. And Jan says, I didn't tell anybody to put her on as his wife. I don't care if he did or he didn't. She's still there as the co-owner of his townhouse. Marsha's living in Ohio. This is not a situation that there's a, it's a sham. It's not a real marriage. I think that is the true basis for distinguishing the case. In the Drew's case, the couple was married and the husband became disabled after one year of marriage. The wife had the assets and she sought to divorce, the husband's family sought to have this divorced and the wife said no right away. She didn't answer the petition. She filed a motion to dismiss. She didn't answer interrogatory. She didn't seek support and maintenance and go on and on. This was almost two years of litigation when all of a sudden it's like, oh, I could have had a V-8. Ms. Rosen, with regard, assume we don't find Drew's distinguishable and it's still controlling. How would you get around our stare decisis to overwrite it? And what is your best argument? Okay, I understand stare decisis and indeed in Drew's they went way back to go with stare decisis. They went from 1897 to 1986. But I think it was wrongly decided from the get go, frankly. I think honestly that it was decided more as a religious matter than a legal matter. It was decided at the time that marriage was too personal of a decision. Well, it's personal, obviously it's personal, but it's also a very legal decision. When you're married, you can file a joint income tax. When you're married, you can go into the hospital room of a person who's in a coma. When you're married, you can collect Social Security death benefits if you've been married for more than ten years. It's legal. Some people may think it's spiritual. Some people think it's a sacrament. There's the term the sanctity of marriage. But I don't think those concepts apply. I don't think they are correct here. I consider marriage a legal contract. And this is a legal contract that I think the guardian under the best interests of the disabled person should be able to dissolve. That's my best argument. How do we know that a person who is incompetent wants to be divorced? Well, in some cases you can tell and in some cases you can't. Because, you know, disability is a wide-ranging category, you know. In this case, if you looked at the legislation and you look at NRAE-KEJ, I'm sorry, I'm proposing that that be the rule that's adopted. If you can tell, if the person can come in and testify, you know, some disabled people can testify to their wishes. Some can do estate plans, you know, if they have testamentary capacity, even though they're disabled. The guardian can do an estate plan, but some you can't. And frankly, in this case, I would contend that my client you could not tell. Jen argues that because Jen says they love each other and they don't want to be divorced. But I believe that you can determine this on the best interests of the ward in an evidentiary hearing before the probate judge. The probate judge knows these people. She knows this case. You can put on the best interest, a best interest standard. He can testify, Jen can. I love her, she loves me. You know, if he can get around the hearsay on that. But there's, you can tell, is it in her best interest? Is it in a woman's best interest to remain married to a man who's living with another woman in another state spending marital income? I would say no. But he can make any argument he wants. And the trial judge in any case, not just this case, if you cannot distinguish truths, in this case the trial judge can make that call and we can live with that. But I don't think if there's any fairness to having a blanket rule that this can never be the case. I'm sure you read the amicus brief filed by the public guardian. There are situations where people are getting terribly abused in this situation. There's physical abuse, there's, you know, financial abuse. There's no reason for this. There's no reason why it cannot be a case-by-case determination based either on the ability of the ward to testify and show or the ability, if not, let's say it is a religious view. Let's say this is a person who is deeply religious and believes that the bonds of matrimony should never be broken for any reason. Even if he's beating her, you know, to death. If they can show that, fine, no dissolution. But if that can't be shown, then the judge can weigh it. And I have great trust in Judge Kawamoto, who's heard this case for years, that she could do that. Any of the judges in the probate court could do that. I think the case of In Re K E J is particularly important. This is my second best argument, Justice Ginsburg. If there's a decision that's personal, I would say sterilizing a ward is more personal than a dissolution action. Sterilizing a ward is a permanent, permanent act. It requires general anesthesia. It requires surgery. It requires a very, the end of a fundamental right to have children and to raise children. This is marriage. I mean, I'm sorry if I seem cavalier or callous, but the relationship, if it's financial, if he wants to see her, he can come and see her in Ohio. If he loves her dearly and wants to, let him come. But it's not right that it can never be a dissolution. This is not as personal as the sterilization. They're both legal, but the sterilization is exclusively personal. This, I would say, is primarily a legal contract. And the personal is secondary. I would actually think that, you know, because it's financial in this case, it could be a decision of the guardian of the estate. But I don't have to go there. The guardian of the person can make this decision. But I do believe it is a financial decision and not so personal, particularly in my case. A moment ago you alluded to the judge weighing the evidence and determining what's in the best interest. Is there a standard of proof that there should be, a preponderance or clear and convincing? I would. That's my recommendation. So you would be asking us if we agree with you to set those more as policy decisions or decisions as a matter of law as to how the matter is to proceed rather than through the legislation? Well, the legislature can follow. I mean, the legislature followed in Ray K.E.J. The case came first and then the legislation. And in that case they adopted the legislation, they adopted a clear and convincing evidence standard. And that's fine by me. I think that's, you know, if you want to take a different approach, that's fine by me, too. But I'd be quite satisfied with that. It is a very serious decision. And it is a weighty decision. But when you're the guardian of a person, you make weighty decisions all the time. It's a big responsibility. And these guardians take it very seriously. And they can do it. I think that all of Jen's arguments, frankly, are arguments to be made to the trial judge. If he says it's most likely that Marcia would have wanted to remain married to him, let him show that to the trial judge. Let him talk about that. Let him talk about the serious risks he mentions in his brief about the guardians pursuing this. If there's serious risks and the guardian has a personal bias, as he claims my client has, let the trial judge look at it and say, you know what? I think you're just trying to cut him out of the inheritance. No, we're not going there. That's fine. I'm just saying it cannot be a blanket prohibition against it. That's all I want. So if the trial judge were to find that, I could live with that comfortably. And I believe that that's the case with all of his arguments. So that's really, I don't need to take that much time. As to the motion, you took two motions with the case. And I was surprised, frankly, about that. But as to the motion to dismiss my not going, that I didn't have permission to file a petition for leave to appeal after I had permission to file the appeal, that I find deeply offensive, that I think that filing, that this is a part, a continuation of the appeal, and that the Illinois Constitution gives everyone a right of access to the courts and a right to an appeal. And to say that I didn't have that, I think that would really be a due process violation. If a disabled ward, the guardian of a disabled person didn't have a right to an appeal of something of this magnitude, I think that would be a travesty. As to the motion to strike, I said in my response that it was in reply to their argument that this is a legislative decision. And I thought that, you know, it was appropriate. If you deem otherwise, deem otherwise. Thank you very much. Thank you very much. Thank you. Counsel for the appellee. Good morning, Justices. My name is Jordan Reifus, and I represent the appellee, Jan Carbin. Would you pronounce your last name again? You were kind of moving there. I didn't hear it. Reifus? Yes. Thank you. This is an appeal from the appellate court decision that affirmed or upheld the trial court decision to both rule on the Drews case. They relied on the Drews case to deny the guardian the right to file a petition for dissolution of marriage or proceed with a dissolution of marriage. Over the years and years, counsel pointed out how far back it goes. So it is a decision that embodies basically the policy that the legislature has stated in this state. The legislature is clear about its interpretation of or in its statements in probate act 11A-17, which empowers the guardian to do certain acts and not to do certain acts. The right of the guardian to file or proceed with a dissolution is prohibited by the Drews case and by the legislature. And I say by the legislature specifically because after the Drews decision, the legislature did in fact have an opportunity and did in fact amend the legislation to carve out one narrow exception. That's the one that the Burgess case relied on. And that is that if the ward had indicated prior to the disability that there was in fact a motivation and intention, clear intention by the ward to be divorced, by filing a divorce action, that the guardian could continue with that divorce action. That is the sole exception that the legislature in the year 2000, effective 2000, granted to a guardian. Since that time, it has had every opportunity to amend the legislation and has not seen fit to do so because the policy of this state is in fact that a guardian should not be allowed to file or proceed with a dissolution of marriage. Mr. Griffiths? With regard to the dissent, Justice Cahill's description under Drews is that the guardian of the disabled person can defend a divorce case and proceed on the best interest of the disabled person in that situation. So why couldn't the opposite happen? Well, the idea is that the capable What's the difference? I mean, the guardian has to proceed in the best interest of the disabled person in defending themselves in a divorce case. So why couldn't that occur? Well, the ward is not choosing to have the marriage dissolved in this instance where they're defending a situation. And in fact, that would be the defense, that I choose not to have my marriage dissolved. So what if the guardian agrees and enters into a settlement agreement? Well, I think that the best interest is not the first standard that we have to go by, the first test that has to be used. I think the first test, the first hurdle, if you will, is what is the intention of the ward? And that has been consistent in all of the cases that the Supreme Court has rendered, even in KEJ. What is the intention, clear intention of the ward before making that decision? To make a decision under the circumstances that have occurred since the person became disabled, isn't the best interest standard one that we should apply? The best interest standard may come into play, but not initially. I'm saying that the intention, the clear intention of the ward is what prevails. And I think that's what the Druze legislative policy decision is based upon, is that only if the ward has made a clear indication that they want to be divorced should that divorce be allowed. If there is a defense, then the defense, if the capable party brings the action, then the defense would be that I don't want to be divorced. If there is some clear intention by the ward, and counsel pointed out, that there are different levels of incompetency. And point of fact, in the case, the facts of this case in the record show that Marcia has expressed the interest to not be divorced, to still remain married to Jan Carbon. This has appeared numerous times in the pleadings and numerous times in affidavits. It has never been denied by Carla Hibbler, by the guardian. And therefore, it is in fact the facts of this case upon which the decision has to be made. So in this case, the ward has stated the preference. And therefore, I don't think you get into what's in the best interest. I mean, someone can say it's in the best interest that I not be married. I'm a workaholic. I'm hardly ever home. My wife actually prefers me not to be home too much, and so we have an ideal marriage. That's not the basis upon which my marriage should stay in existence, is whether it was in the best interest. Her daughter may decide that there's somebody else out there much better suited for my wife or for her mother than myself. The best interest really has to come way after the first standard, which is what is the intention of the party. It is so personal. Mr. Reifus, going to Ms. Rosen's second best argument, she classified it. What about public policy allows a guardian to seek sterilization of a ward, but not a divorce on behalf of a ward? If I'm allowed to not accept it as her best argument or as a good argument. Well, I'm just saying, I'm not saying it's her, she said it was her second best argument. I'm not saying that sterilization is not a very serious and personal matter. Whether it is, of course, it's not the same way personal as is a marriage or a dissolution of marriage. Sterilization is a medical health issue. There's a long line of cases in this, decided by this court and public courts, that have allowed the guardian to make health and medical decisions. So I'm not prepared to argue that that shouldn't be the case. But this is different. Whether a person should be married or not married or whether they should remain married or not married is so personal. I mean, I think we've all had situations. What if the facts would come out in an evidence you're hearing that there was physical abuse? Would that be a medical? That would be a terrible situation, but it is remedial without having a divorce. There's a protection, there's separations. There's all sorts of protections that you don't have to go to the extreme of a divorce situation. Not that it's something I advocate, but there are lots of relations, marital relations where there is a physical. I have to stop you there. Wasn't that same argument? You said that the difference public policy-wise between sterilization and divorce is that sterilization is a medical issue. Well, abuse, physical abuse, could be classified a medical issue as well. And you said there were a lot of other things you could do, you know, separation, whatever. Well, aren't there a lot of things you could do short of sterilization and a lot of medical issues as well? Well, I think in KEJ they addressed the other aspects, other possible medical conditions. And I'm not going to argue whether or not I thought the alternatives were a better approach or not a better approach. But they did address that issue, and I think they found that it wasn't as good, that they had tried certain contraceptive methods and that they didn't think it was as permanent and as useful to her and the risk of a pregnancy was so disastrous or potentially disastrous that they felt that the sterilization was the only remedy. I'm really not going to or want to or am not prepared to really argue whether or not there should have been other alternatives used, but the point is that there are other alternatives. And since it is a medical and a health decision, I think the Supreme Court has decided many times that that is an appropriate decision for the guardian to make. I don't think that in an abuse situation, although physical abuse could result in something physically happening to the ward, that the guardian would have to make a medical decision. Do I have an operation? What do I do? But the first decision would be, let's get an order of protection here. And that would be the safeguard that the ward would have. So I don't think you have to go to an extreme just to get the mountains out of the molehill. You have to take care of things as they need to be taken care of. Mr. Reifus, again, with regard to Justice Thomas's point on public policy, the public policy of a marriage, I think, presumes that people would live together and be together. Here we have a situation, I think, under the facts, that the husband or spouse is living with another woman in a different state, and that the marriage or the presumption of the marriage is that people would be together and stay with each other isn't existing. So isn't it, you know, logical that there is no marriage in this situation right now? I would have to take exception to that. One, I find it somewhat offensive for counsel to point out that the ward is living in a different state than is Jan Carbon. The guardian moved the ward from the home, the marital home, which Jan Carbon had been taking care of her. But in terms of whether or not there is a marriage or relationship, I think everybody in this room knows there are thousands of marital couples who are living separately, whether they're living in different households, they remain married, or whether they're living in the same household and they remain married. They could be living in the same household, never talk to one another. They could be living in the same household and argue daily with each other, and the marriage sustains. There are situations where one of the marital partners is guilty of infidelity, and it's known to the other partner, and yet they don't get divorced. There isn't a dissolution of marriage. They, in fact, work on the relationship to try to remedy whatever the problem was that caused the rift or the infidelity. I don't think that the fact that one party lives in a different household or a different state changes the fact that they love each other, that they were a loving family couple for 14 years before the disability, that he lovingly cared, Jan lovingly cared for his wife, even though she was in a disabled state 24-7 for seven years until his disability, his own personal disability, the Parkinson's, got so severe that he was no longer physically able to do so. To say that he didn't have a loving marital relationship because they weren't conjugally united weekly or monthly or even annually, I don't think that's the basis or the definition of what a marriage or a good marriage is. I think marriage can exist, and it's a feeling. It's a feeling of wanting to be committed to the other person, and I don't think there's been any showing whatsoever. I mean, I know there's been no showing whatsoever that this marriage should not continue. So I think that the policy that was set by the legislature in this case is the policy that is appropriate in this state, that therefore this court, although it does interpret statutes, it shouldn't be amending statutes, and when the statute is clear by the legislature, that this court can interpret it, but I don't think it can change it. I think that's exact, and the Drew's decision really embodies, it states what the law is, what this legislature intends, and what the policy is, and in fact, as I said before, the legislature continues that policy since the Drew's case in 1996, because it amended it in the year 2000, only with a very narrow exception, and has not amended it otherwise to this date. Now, there is pending legislation, 2547, although I do have a motion to strike counsel's reference to it in a reply brief for the very first time. I don't think that was appropriately fair, because I didn't have an opportunity to provide a written response to it in the brief, since it came in after our brief, and I think for that reason it ought to be stricken. But the point is, the appellate is in a sense conceding my point. It underscores that the legislature is the appropriate body to be stating what the policy of Illinois is, and the appellate court agrees, and the trial judge agrees that it's the legislature that would have to make the change here, and that's what the majority in the Drew's, sorry, in the appellate court, in the Carbon case, has held, that it should be the legislature, if the legislature sees fit. Now, there is a bill pending, but it's still pending. It's been pending for quite a while, so we don't know if it's going to pass or in what form it's going to pass. If, in fact, this court were to, in my opinion, mistakenly set some standards and allow a guardian to file a petition and proceed with a petition for dissolution of marriage, what happens if the legislature then passes something? You've got two co-equal branches of government that are going to have perhaps possibly differing standards and differing safeguards, if you will, on the situation. So I think that for practical reasons, I think it is something that the legislature should decide, determine whether or not the policy has changed. I don't know that it's a religious, I don't think there's any showing that this is a religious basis for the rule in the Drew's case and the legislative statute in terms of it being, prohibiting the guardian. I think it's because it's such a personal nature, a marriage is such a personal decision. I think we all know that there's probably family members and friends of a person who say, don't marry that person, or why are you still married to that person, and yet the individual decides for whatever value and purpose it serves them to remain married or to get married or to remain married, they do it. And so it's not for a third person or third people to make this decision. It's something so personal that only the individual can make it, and I don't think that it's appropriate to give the third party, the guardian in this particular situation, the right to make that decision. The statute for power of attorney for health gives the individual the right to delegate the end of life situations because that's something that's a medical health situation they're allowed to do. There's no provision in the statute that allows for a person to delegate the right to remain married or to get married in the statute, so it's so personal that it's not even delegable. It's only they who can make that decision, so I think that it is appropriate to continue to not allow, to not permit a guardian, a third person, to make that decision for a ward. I do think that part of the argument by the appellant is to really kind of malign Jan and make him look like the bad guy here. You know, when they talk about the fact that he participated for two years, he did file the petition. There's no question about it, initial petition. It's clear why he did it. He did it to ameliorate his adoptive daughter, Cara Hibbler, who made the request. And, you know, why didn't she file in Ohio? Why didn't she file in Michigan where she lives, where Cara lives? Clearly those states don't allow a guardian to file either, so she, I don't want to say tricked, but she convinced Jan to file here because she knew that the other spouse, the capable spouse, is allowed to do that and she didn't have any control over him, but she did ask him and he conceded to do that. And he, you know, he's being maligned for doing that. And even before he was aware of Druze, you have to understand that this case was in the domestic relations division of the Cook County court, not in the probate. This is a probate matter, the Druze is a probate matter, and it's based upon the Probate Act 11A-17. And so really not only did the counsel not know about Druze in the divorce court, nor did the trial judge, the divorce trial judge, know about it. It wasn't until Jan's motion to ask for the appointment of a guardian ad litem to prove what he knew, that Marsha was in fact not wanting to get this divorce. That's why he wanted a guardian ad litem appointed because he, you know, it wasn't until it went to the probate court that they found out about Druze. But up until that point in time, Jan had repeatedly filed pleadings and affidavits asking for this case to be dismissed because she did not want to be divorced, he did not want to be divorced. Yes, he filed the divorce, and then finally he realized that, well, if I don't want to be divorced, I've got to drop my divorce action. And even then he didn't know about Druze, and he was still arguing that the case shouldn't proceed. So any pleading that he filed, he always included some, well, not always, but most of the time he included a reference to the fact that they were a loving couple, they still loved each other during the proceeding, and she did not want to be divorced. That was never denied. It is in fact the facts of this case upon which this court has to make a decision. It can't presume other facts that are not in evidence, and those are the facts that are in evidence. If he makes an allegation many times, affidavit many times, and she doesn't deny it, then in point of fact it is the law, it is the facts in this case upon which this court has to make a decision. I think I'm just about out of time, so if there's any more questions, and I'm certainly out of moisture. So anyway, the appellee does ask that this court uphold the Druze decision, which has always been the law of this land, that with the one minor little exception, that if the ward is expressing intention by filing a divorce prior to the disability, that then the guardian can proceed to continue with that divorce action. But other than that, I don't think this court should find that a third party has the right to make that decision, and therefore should uphold the legislature and the Supreme Court in its prior decision with Druze. Thank you. Thank you for your argument. Thank you. Rebuttal. Just a few points. First of all, the legislation is not clear. Nowhere in the legislation does it say that a guardian cannot initiate a divorce. It's silent. So this court has to interpret it. And the court interpreted that legislation in 1986, not 1996, 86, and said that that's what it meant. So you can look at it again and say, no, I don't think that that's what it means in light of today's world. I don't know if you don't have to go so far as to say it didn't mean it then, but in today's world it does not mean that. So as to the appellate court, yes, I'm the appellant here because the appellate court had no power to reverse you. Obviously, they could not reverse you. This is your court, your decision, and they are just the appellate court. The justices said that in their opinion. As I noted in my reply brief, the first words out of Justice Garcia's mouth when I spoke stood up to the podium were, well, Ms. Rosen, I suppose this is an intermediary stop for you, because everybody knew I had to come here to get relief. Not there. And Justice Cahill did me a favor by writing a dissent saying, well, we could distinguish and let you go based on the facts. But I had to come here. So it's not as though the appellate court felt that this was wrong, and it's not as though the legislation stated otherwise. It's just like you can't take any meaning from the fact that the legislature chose not to amend in 2000 and add some change about this. It's like saying that you can take some meaning out of the fact that a PLA is denied. You can't do that. The fact that they didn't amend the statute in 2000 to change this is irrelevant. It doesn't say anything. I don't know what was before the legislature. I don't know what people were thinking. They had a situation there of the Burgess case. And, Justice Burke, your question is very interesting about Burgess to me, because you say, what's the difference? How can you defend and not be able to initiate? There's some differences, because I guess it seems grossly unfair to force an abled person to remain married to somebody. If they don't want to be married, you can't keep them married. So that's the difference. Ultimately, if an abled person wants to divorce, if Jen had wanted to persist with the petition that he had filed, ultimately, it wouldn't have mattered what my client, if she wanted to remain married or not. He has a right to be divorced. That's the law. And he did initiate this, and he did say irreconcilable differences, by the way. That's irrelevant. They're this loving couple. You can think for yourselves if an abled-bodied man would initiate a divorce because his daughter says to. I mean, that's, to me, highly incredible. But in terms of initiating, defending a divorce, if the person who's not disabled initiates a divorce and then becomes disabled and the guardian is allowed to pursue it, how do you know that the disabled person wouldn't have changed her mind or his mind? You don't know. People, I mean, that's why in any divorce situation, there's always the chance of reconciliation. And so until you're divorced, you know, marital income is marital income. I mean, these are legal decisions, but you don't really know in some cases what's going to happen. So if Burgess is an exception to Druze, and it's really, to me, just something different than Druze, it's not rational that that's the case. It doesn't fit with Druze, because you don't really know that that disabled person would have maintained the same intent throughout the proceedings. She could have changed her mind, but you're allowed to, the guardian is allowed in that case to proceed with the best interest. So I think that should be, that should be the same analysis here, that if there's the best interest, it can be. I just want to note a few quick things. Reference to the Power of Attorney Act, to me, is irrelevant, that there's no provision in the Power of Attorney Act for health care to allow for health care. And Mr. Reifus's statement that there were repeated pleadings about he didn't want this is just not accurate. He filed one motion to dismiss, and even when he was, after he filed the motion to dismiss, he was still seeking money from her for support and maintenance. And as to the question, Justice Thomas, about physical abuse, isn't that medical also? My opponent said, well, get an order of protection, that would work. Well, why? Why get an order of protection? Why allow somebody who's abusing somebody to stay married and potentially inherit from the person, because you can separate them? I don't think that's right. It's not necessary. It could deem it medical or not. If somebody is abusive like that, you can say that that bond of matrimony is broken, done. And there's no reason to maintain a fiction of marriage, and there's no reason to insist on something less drastic than divorce. Divorce should be an option in the right circumstances. Only in the right circumstances when the trial court hearing the probate case is familiar with the parties and familiar with the situation and can rely on a guardian ad litem to assist, can make that decision based on clear and convincing evidence. Thank you very much. Thank you, both counsel, for your arguments today. Case number 112815, Carbon v. Carbon, is taken under advisement as agenda number 11.